# United States Tax Court

REVIEWED
167 T.C. No. 5

SIEMENS MEDICAL SOLUTIONS USA, INC. AND
CONSOLIDATED SUBSIDIARIES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 11432-25.                                          Filed July 15, 2026.

————

I.R.C. § 245A, which was enacted by the Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, § 14101, 131 Stat. 2054, 2189 (2017), provides a deduction (DRD) for certain dividends received by a U.S. corporation from certain foreign corporations. The DRD applies to distributions made after December 31, 2017.

The TCJA included interrelated provisions to move the U.S. tax system from a worldwide tax system to a territorial tax system. The provisions did not all have the same effective dates and created gaps that affect certain taxpayers. The Department of the Treasury and the IRS issued Temp. Treas. Reg. § 1.245A-5T, which limits the DRD under I.R.C. § 245A to address one such gap.

P claimed the full DRD under I.R.C. § 245A for a dividend received from a foreign source. In its Motion for Summary Judgment, P argues that it is entitled to a DRD for the full amount and that the limitation provided in the temporary regulation does not apply. In R's Cross-Motion for Summary Judgment, R argues that the temporary regulation does apply and that P is entitled to a limited DRD.

**Served 07/15/26**

*Held*: P is entitled to the full DRD under I.R.C. § 245A.

*Held, further*, Temp. Treas. Reg. § 1.245A-5T does not alter this conclusion because it cannot contravene the clear statutory text.

KERRIGAN, *J.*, wrote the opinion of the Court, which URDA, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, and FUNG, *JJ.*, joined.

JENKINS, *J.*, did not participate in the consideration of this opinion.

————————

*Eric J. Konopka*, *Jean Ann Pawlow*, and *Alexandra B. Clionsky Kelly*, for petitioner.

*Nicholas D. Doukas*, *William Tyler Halasz*, *Laura A. Humphreys*, and *Victor W. Zhao*, for respondent.

OPINION

KERRIGAN, *Judge*: This case is before the Court on petitioner's Motion for Summary Judgment (Motion) and respondent's Cross-Motion for Summary Judgment (Cross-Motion). Respondent issued a Notice of Deficiency for tax year ended September 30, 2019 (2019 Tax Year), and tax year ended September 30, 2021 (2021 Tax Year), disallowing a full deduction pursuant to section 245A[1] and accompanying regulations for the 2019 Tax Year.[2] Respondent determined that petitioner is entitled to a partial section 245A deduction because of the application of the

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The partial disallowance of the section 245A deduction resulted in a series of adjustments for the 2021 Tax Year.

Extraordinary Disposition Rules, which are part of the section 245A temporary regulations. *See* T.D. 9865, 2019-27 I.R.B. 27, 30.

In its Motion petitioner moves for summary judgment because the deficiencies that respondent determined rest on the application of a regulation that petitioner contends is invalid as a matter of law. Respondent seeks summary adjudication that the Extraordinary Disposition Rules are valid.

For the reasons discussed below, we hold that the Extraordinary Disposition Rules cannot contravene the plain meaning of section 245A. Accordingly, we will grant petitioner's Motion and deny respondent's Cross-Motion.

*Background*

The facts set out are derived from the parties' pleadings and Motion papers. *See* Rule 121(c)(1). They are stated solely for the purpose of deciding the pending Motion and are not findings of fact for this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Petitioner, Siemens Medical Solutions USA, Inc., is a wholly owned subsidiary of Siemens Healthineers AG (SHAG), a German company that provides healthcare products globally. Its principal place of business was Pennsylvania when its Petition was timely filed. At all relevant times, Siemens Healthcare Diagnostics, Inc. (SHD US), a California corporation and member of petitioner's U.S. consolidated group, owned 67.78% of Siemens Medical Solutions Diagnostics Holding I.B.V. (SMS BVI), a Dutch company treated as a corporation for U.S. federal income tax purposes.

During the tax year ended September 30, 2018 (2018 Tax Year), certain foreign subsidiaries of SMS BVI were restructured. On April 1, 2018, SMS BVI sold 100% of Siemens Healthcare Diagnostics GmbH, a Swiss company, for €85,715,399 to Siemens Healthineers Holding III BV, a Dutch company within the SHAG Group (SHAG and its subsidiaries).

On August 13, 2018, SMS BVI sold 100% of Siemens Healthcare Diagnostics Holding GmbH, a German company, to Siemens Healthcare GmbH, a German company within the SHAG Group, for €1,339,593,000. As a result of these two sales, SMS BVI increased its earnings and profits (E&P) by approximately €819,000,000.

On March 19, 2019, SMS BVI made a pro rata distribution of €1,750,000,000 to its shareholders (March 2019 Distribution). Since SHD US owned 67.78% of SMS BVI, it received 67.78% of the March 2019 Distribution which was €1,186,073,740. Of that amount $670,616,109 was a dividend made out of SMS BVI's E&P (March 2019 Dividend). The March 2019 Dividend was entirely foreign source.

Petitioner timely filed consolidated federal income tax returns for its 2019 Tax Year and its 2021 Tax Year. On its Form 1120, U.S. Corporation Income Tax Return, for its 2019 Tax Year, petitioner claimed a deduction for the full amount of the March 2019 Dividend. When preparing its tax return for the 2019 Tax Year, petitioner considered the implications of the Extraordinary Disposition Rules, and it concluded that its two sales that occurred in 2018 "likely" fit the definition of "extraordinary dispositions" under those rules. Of the March 2019 Dividend, $40,630,184 was not attributable to the two sales occurring in 2018. If the Extraordinary Disposition Rules apply, a deduction for $314,992,962 of the March 2019 Dividend would be disallowed.

Petitioner concluded that the Extraordinary Disposition Rules were invalid and that it was entitled to the full section 245A deduction. It filed Form 8275–R, Regulation Disclosure Statement, with its tax return for its 2019 Tax Year. On its Form 8275–R, petitioner disclosed the relevant facts and its legal analysis supporting its position that the Extraordinary Disposition Rules are invalid.

In the Notice of Deficiency respondent determined deficiencies of $5,581,518 and $1,452,006 for the 2019 Tax Year and the 2021 Tax Year, respectively. Respondent disallowed $314,992,962 of the section 245A deduction.

*Discussion*

I. *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Under Rule 121(a), either party may move for summary judgment regarding all or any part of the legal issues in controversy. We may grant summary judgment only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. The moving party bears the burden of

demonstrating that there is no genuine dispute as to any material fact. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74–75 (2001). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520.

There is no material dispute of fact, and we may resolve the Motions as a matter of law.

II.   *Background Law*

A.   *Overview*

The United States taxes its citizens and domestic corporations on worldwide income. *See, e.g.*, *Cook v. Tait*, 265 U.S. 47, 56 (1924); *Huff v. Commissioner*, 135 T.C. 222, 230 (2010). In 1962 Congress enacted subpart F in response to erosion of the U.S. tax base. *See Dougherty v. Commissioner*, 60 T.C. 917, 928 (1973) ("In subpart F, Congress has singled out a particular class of taxpayers, U.S. shareholders, whose degree of control over their foreign corporation allows them to treat the corporation's undistributed earnings as they see fit." (footnote omitted)). The goal of subpart F is to tax currently specified earnings of controlled foreign corporations (CFCs) that are in the aggregate controlled by U.S. shareholders. *Textron Inc. & Subs. v. Commissioner*, 117 T.C. 67, 73–74 (2001). Subpart F applies only to a small portion of the CFC's income, mostly passive income. *See Moore v. United States*, 144 S. Ct. 1680, 1685 (2024).

Since its enactment, the effectiveness of subpart F has been questioned. Generally, the U.S. tax on a CFC's income, not subject to subpart F, is deferred until the income is repatriated in the form of a dividend or other distribution to the CFC's U.S. shareholders. §§ 881, 882; *see also Dave Fischbein Mfg. Co. v. Commissioner*, 59 T.C. 338, 353 (1972); S. Rep. No. 87-1881, at 78 (1962), *reprinted in* 1962-3 C.B. 703, 784. A 2000 Department of the Treasury Policy Study raised concerns that subpart F and the current antideferral system were not preventing erosion of the U.S. tax base. *See* U.S. Dep't of the Treasury, Off. of Tax Pol'y, *The Deferral of Income Earned Through U.S. Controlled Foreign Corporations* (2000), https://home.treasury.gov/system/files/131/Report-SubpartF-2000.pdf.

In 2017 Congress enacted the Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (2017). The TCJA "altered the United States' approach to international corporate taxation" with the goal of

encouraging "Americans who controlled foreign corporations to invest earnings from their foreign investments back in the United States instead of abroad." *Moore*, 144 S. Ct. at 1685–86.

To accomplish this goal, the TCJA included several interrelated provisions which moved the United States from a worldwide tax system towards a partially territorial system. *See id.* at 1686; *see also Varian Med. Sys., Inc. & Subs. v. Commissioner*, 163 T.C. 76, 85 (2024). Three of these provisions are key to understanding the issues raised in the parties' Motions. These provisions provide an exemption for certain foreign income, tax certain income repatriated, and provide an inclusion for certain global income.

Section 245A provides, in part, an exemption for certain foreign income in the form of a 100% dividends-received deduction:

> Sec. 245A. Deduction for foreign source-portion of dividends received by domestic corporations from specified 10-percent owned foreign corporations
> (a) In general.—In the case of any dividend received from a specified 10-percent owned foreign corporation by a domestic corporation which is a United States shareholder with respect to such foreign corporation, there shall be allowed as a deduction an amount equal to the foreign-source portion of such dividend.

Section 245A is effective for distributions made after December 31, 2017. TCJA § 14101(f), 131 Stat. at 2192.

Congress enacted section 245A to help U.S. companies compete on a more level playing field and to eliminate the "lock-out" effect whereby U.S. businesses do not bring foreign earnings back to the United States in order to avoid taxation on those earnings. Staff of S. Comm. on the Budget, 115th Cong., Reconciliation Recommendations Pursuant to H. Con. Res. 71, at 358 (Comm. Print 2017).

To transition towards a partial participation exemption system of taxation, TCJA § 14103, 131 Stat. at 2195–208, included a provision referred to as the Mandatory Repatriation Tax (MRT). § 965; *see also Moore*, 144 S. Ct. at 1686; *Varian*, 163 T.C. at 85. Similar in structure to subpart F, the MRT added accumulated foreign earnings of foreign corporations that had not been repatriated to U.S. shareholders (and thus not subject to U.S. tax) to the U.S. shareholders' subpart F income for the transition year. § 965(a), (d); *see also Moore*, 144 S. Ct. at 1686;

*Varian*, 163 T.C. at 85. The amount added to subpart F income is taxed at a lower than normal rate. § 965(c); *see also Moore*, 144 S. Ct. at 1686; *Varian*, 163 T.C. at 85. The MRT is a "one-time, backward-looking tax" that was effective for the last taxable year of foreign corporations beginning before January 1, 2018. *Moore*, 144 S. Ct. at 1686; *see also* § 965(a).

The House Ways and Means Committee was aware that, in the past, U.S. companies with foreign earnings had accumulated significant undistributed earnings because those earnings were not taxed until they were repatriated. H.R. Rep. No. 115-409, at 375 (2017). Additionally, the House Ways and Means Committee was aware that, going forward, U.S. companies with foreign earnings would benefit from the new 100% dividends-received deduction. To avoid a "potential windfall" for corporations that deferred income, "the Committee believes that it is appropriate to tax such earnings as if they had been repatriated under present law, but at a reduced rate." *Id.* The Senate Finance Committee included similar language in its report to the Senate Committee on the Budget. *See also* Staff of S. Comm. on the Budget, 115th Cong. 363.[3] The MRT was the vehicle for accomplishing this objective.

The TCJA created another new provision to tax foreign earnings prospectively. Specifically, section 951A provides for current year inclusion of global intangible low-taxed income (GILTI) by U.S. shareholders and is commonly referred to as the GILTI regime. TCJA § 14201, 131 Stat at 2208. The Senate Finance Committee recognized that without any base protection measures such as GILTI, the dividends-received deduction would create an incentive for a U.S. corporation to allocate income subject to the U.S. corporate tax rate to a low- or zero-tax jurisdiction where the income might be distributed back to the United States and be eligible for the dividends-received deduction. Staff of S. Comm. on the Budget, 115th Cong. 370. Section 951A is effective for taxable years of foreign corporations beginning after December 31, 2017, and for taxable years of U.S. shareholders in which or with which such taxable years of foreign corporations end. TCJA § 14201(d), 131 Stat. at 2213. And, despite its name, it generally taxes U.S. shareholders of a CFC on *all* income of the CFC that exceeds a

---

[3] The Senate Finance Committee's recommendations to the Senate Committee on the Budget appear without revision in this report. Staff of S. Comm. on the Budget, 115th Cong. 1.

certain deemed threshold return on the CFC's tangible assets. *See* § 951A(a), (b), (d).

To summarize in general terms, section 965 (MRT) taxes foreign earnings accumulated before the TCJA was enacted while section 951A (GILTI) taxes post-TCJA foreign earnings. Section 245A allows a deduction for certain post-TCJA dividends from foreign corporations, effectively exempting such dividends from U.S. tax.

B.     *Effective Dates*

These three interrelated provisions, section 245A, section 951A, and section 965, have different effective dates. The Extraordinary Disposition Rules were crafted to address the discrepancies of the varying effective dates.

1.     *Section 245A*

The House and Senate versions of the TCJA had different effective dates for section 245A. The Senate version applied section 245A to taxable years "beginning after December 31, 2017, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end." S. 1, 115th Cong. § 14101(f) (2017). The House version, which became the effective date included in the enacted TCJA, applied section 245A "to distributions made after . . . December 31, 2017." H.R. 1, 115th Cong. § 4001(f) (2017).

2.     *Section 951A*

The House and Senate versions of the TCJA had different provisions for the current year inclusion of certain foreign income. H.R. Rep. No. 115-466, at 635–44 (2017) (Conf. Rep.). The conference agreement for the TCJA followed the Senate amendment, providing for an inclusion for GILTI by U.S. shareholders, with modifications. *Id.* at 644–45. The Senate provision applied section 951A to taxable years "beginning after December 31, 2017, and to taxable years of United States shareholders in which or with which such taxable years of foreign corporations end." S. 1, 115th Cong. § 14201(d); *see also* TCJA § 14201(d), 131 Stat. at 2213.

3.     *Section 965*

The income subject to MRT, which serves as the transition tax from the old system to the new system, was generally measured as of

December 31, 2017. *See* § 965(a). The House and Senate versions of the TCJA had similar provisions and the same effective date terms. H.R. 1, 115th Cong. § 4004(a); S. 1, 115th Cong. § 14103(a).

4.      *Mismatch of Effective Dates*

Since sections 245A, 951A, and 965 all have different effective dates, there can be gaps between their applicability for certain taxpayers. For those taxpayers that have taxable years different from the calendar year, for example, there could be a gap between the application of section 245A and section 951A because a section 245A deduction is potentially available for any distribution made by a foreign corporation after December 31, 2017, whereas section 951A would not apply until the foreign corporation's next taxable year begins. Additionally, there may be a gap between the application of the MRT (measured no later than December 31, 2017) and the start of the GILTI regime, resulting in certain dividends' being eligible for a deduction under section 245A despite the underlying earnings' not being taxed by the MRT or included in income under section 951A.[4]

III.   *Extraordinary Disposition Rules*

On June 18, 2019, the Department of the Treasury and the Internal Revenue Service (collectively, Treasury) issued final temporary regulations, providing for a limitation on the section 245A deduction, effective on June 18, 2019. T.D. 9865, 2019-27 I.R.B. at 27. The preamble explains that the regulations address cases where the deduction eliminates income that was not subject to tax under section 965 and is the type of income that is subject to tax under subpart F and section 951A. T.D. 9865, 2019-27 I.R.B. at 28. As the preamble puts it, "the temporary regulations address transactions that have the effect of avoiding tax under section 965, 951A, or 951[5] by inappropriately converting income that should have been subject to U.S. tax into nontaxed income." *Id.*

The preamble justifies the rules in the temporary regulations by appealing to the integrated operation of the post-TCJA international tax

---

[4] A version of the subpart F regime remains in effect but applies only to limited categories of income.

[5] Section 951 requires U.S. shareholders of a CFC to include currently their pro rata share of the CFC's current-year subpart F income even without a distribution, eliminating the deferral of U.S. tax on those earnings.

regime, focusing on sections 245A, 951, 951A, and 965. The explanation of the provisions states:

> Although the section 245A deduction is generally available for untaxed foreign-source earnings, read collectively this integrated set of statutory rules can be reasonably understood to require that the deduction not apply to earnings and profits attributable to income of a type that is properly subject to the subpart F or GILTI regimes, which address base erosion-type income.

T.D. 9865, 2019-27 I.R.B. at 29. The preamble further explains that Treasury "do[es] not believe Congress intended section 245A to defeat the purposes of subpart F and GILTI" and acted with authority pursuant to section 245A(g) to issue regulations. T.D. 9865, 2019-27 I.R.B. at 30. Treasury explains in the preamble that section 245A is "designed to operate residually, such that the section 245A deduction generally applies to any earnings of a CFC to the extent that they are *not* first subject to the subpart F regime, the GILTI regime, or the exclusions provided in section 245A(c)(3) (and were not subject to section 965)."[6] T.D. 9865, 2019-27 I.R.B. at 29 (emphasis added). In other words, the section 245A deduction should apply only to the type of earnings that are not subject to subpart F, the GILTI, and the MRT.

The preamble specifically addresses the effective date mismatch we discuss above. It explains that in the TCJA there may be a gap between when section 951A first applies and the last date on which E&P are measured for the purposes of the MRT. T.D. 9865, 2019-27 I.R.B. at 30. Treasury further explains that this gap, referred to in the temporary regulations as the "disqualified period," is from January 1, 2018, to the start of the next tax year for fiscal year taxpayers. *Id.* Treasury's concern is that, during this disqualified period, the foreign income of a CFC may not be subject to any tax and yet still be eligible for the section 245A deduction. T.D. 9865, 2019-27 I.R.B. at 30–31. As a result, the temporary regulations provide the Extraordinary

---

[6] Earnings that *are* first subject to the subpart F, MRT, or GILTI regimes attain the status of previously taxed earnings and profits (PTEP) under section 959. Such amounts are excluded from a shareholder's income when distributed, § 959(a), and generally are not treated as dividends, § 959(d). Thus, they do not qualify for the section 245A dividends-received deduction, nor is the deduction needed, because the associated income is already exempted from a second round of U.S. tax.

Disposition Rules to limit the section 245A deduction for such income. T.D. 9865, 2019-27 I.R.B. at 31.

The preamble explains an extraordinary disposition as a disposition that meets the following requirements:

> [T]he disposition must (i) be of specified property (defined in § 1.245A-5T(c)(3)(iv) as any property other than property that produces gross income described in section 951A(c)(2)(A)(i)(I) through (V)), (ii) occur during the [specified 10% owned foreign corporation]'s disqualified period (as defined in § 1.245A-5T(c)(3)(iii)) and when the [specified 10% owned foreign corporation] was a CFC, (iii) be outside of the ordinary course of the [specified 10% owned foreign corporation]'s activities, and (iv) be to a related party. *See* § 1.245A-5T(c)(3)(ii).

*Id.* The temporary regulation defines a disqualified period as beginning on January 1, 2018, and ending as of the close of the taxable year of the specified 10% owned foreign corporation, if any, that begins before January 1, 2018, and ends after December 31, 2017. Temp. Treas. Reg. § 1.245A-5T(c)(3)(iii).

If the requirements of an extraordinary disposition are met, certain consequences occur. The net gain is classified as E&P and allocated to the extraordinary disposition accounts of the shareholders of the specified 10% owned foreign corporation in accordance with their owner share. *Id.* subdiv. (i)(C). When that corporation pays a dividend to its shareholders, the dividend is first considered paid out of non-extraordinary disposition E&P; the dividend is next considered paid out of the extraordinary disposition account to the extent of the section 245A shareholder's extraordinary disposition account balance. Temp. Treas. Reg. § 1.245A-5T(c)(2)(i). This latter amount is the extraordinary disposition amount. *Id.* subpara. (1). Under the temporary regulations, the section 245A deduction is disallowed for 50% of the extraordinary disposition amount. Temp. Treas. Reg. § 1.245A-5T(b)(2)(i).

The temporary regulations were promulgated with retroactive effect pursuant to section 7805(b)(2) which allows Treasury to apply regulations retroactively if the regulations are promulgated within 18 months of enactment of the underlying statute. *See* T.D. 9865, 2019-27 I.R.B. at 36.

IV.    *Parties' Arguments*

The parties do not dispute that petitioner was eligible for the dividends-received deduction. Rather, the parties dispute whether the Extraordinary Disposition Rules apply and limit petitioner's claimed section 245A deduction. Additionally, the parties do not dispute whether SMS BVI's two sales during 2018 meet the requirements of an extraordinary disposition. Since SMS BVI's 2018 Tax Year ended on September 30, 2018, it had a gap from January 1, 2018, to September 30, 2018, which met the temporary regulation's definition of a disqualified period.

A.    *Petitioner's Arguments*

Petitioner contends that applying section 245A in this case provides a clear result. Since petitioner's March 2019 Dividend was distributed after December 31, 2017, from a qualifying corporation and was entirely foreign source, it contends that under the plain terms of section 245A it was entitled to the entire deduction.

Additionally, petitioner argues that there is a conflict between the statute and the regulation and that Congress never passed a statute that limits the section 245A deduction. Petitioner posits when there is a head-to-head conflict between a statute and a regulation, the statute wins. Besides the conflict between the statute and the regulation, petitioner argues that there are other problems with the regulation. In particular petitioner contends that the regulation was retroactive and did not comply with the Administrative Procedure Act (APA).

B.    *Respondent's Arguments*

Respondent argues that Treasury issued the "necessary or appropriate" regulations to carry out section 245A. Respondent relies upon section 245A(g) in support of his position. Section 245A(g) provides: "The Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of this section, including regulations for the treatment of United States shareholders owning stock of a specified 10 percent owned foreign corporation through a partnership." Additionally, respondent contends that the APA does not apply and even if it did apply, Treasury complied with the APA.

V.    *Analysis*

The parties' arguments raise the following issues that we need to address: the plain meaning of the statute and whether the Extraordinary Disposition Rules apply.[7]

A.    *Statutory Analysis*

We start with the familiar maxim "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Varian*, 163 T.C. at 87 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). And when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 88 (quoting *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021)).

Petitioner claimed a deduction for the March 2019 Dividend. The effective date for section 245A is "distributions made after . . . December 31, 2017." TCJA § 14101(f), 131 Stat. at 2192. The March 2019 Distribution was made to the shareholders of SMS BVI in March 2019, well after December 31, 2017.

Petitioner's claimed deduction also met the requirement that the provision applies only to dividends paid by a specified 10% owned foreign corporation. SHD US, a member of petitioner's consolidated group, owned 67.78% of SMS BVI. SMS BVI was a CFC of which SHD US was a U.S. shareholder, making SMS BVI a 10% owned foreign corporation. *See* §§ 245A(b), 951(b). Section 245A applies only to the "foreign-source portion" of a qualifying dividend. § 245A(a). All of the March 2019 Dividend was from foreign earnings.

Because all the elements of section 245A were met, petitioner contends that it was entitled to the full deduction under the plain terms of section 245A. *See Varian*, 163 T.C. at 87–88. We agree with petitioner.

---

[7] If we conclude that the Extraordinary Disposition Rules do not apply, we do not need to address whether the Extraordinary Disposition Rules meet the requirements of the APA.

### B.     *Application of Extraordinary Disposition Rules*

Treasury's Extraordinary Disposition Rules conflict with the plain meaning of section 245A.  The Extraordinary Disposition Rules addressed mismatched effective dates that Treasury believed caused a gap where the earnings underlying certain dividends would not be taxed.  As we explained in *Varian*, the House and the Senate versions of the TCJA had different effective dates for section 245A.  *Varian*, 163 T.C. at 103.

In *Varian* there was a mismatch between the ultimately enacted effective date of section 245A and the TCJA's amendments to section 78.  *Varian*, 163 T.C. at 104.  As in *Varian*, Congress "chose the rule it adopted over a readily available alternative."  *Id.* at 103.  Since the House and the Senate versions of the TCJA had different effective dates for section 245A, Congress had to choose what the effective date should be in the final version.  Congress chose to have section 245A apply to distributions made after December 31, 2017.

Additionally, Congress chose the effective date for the start of the GILTI regime.  The House version of the TCJA did not include the GILTI regime, and Congress chose to include the GILTI provision with modifications in the final version of the TCJA.  Congress chose for the GILTI regime to apply to taxable years of CFCs beginning after December 31, 2017, and to taxable years of U.S. shareholders in which or with which such taxable years of foreign corporations end.  TCJA § 14201(d), 131 Stat. at 2213.

Congress also chose the measurement date for determining income subject to the MRT.  The income included is the greater of two measurements of certain foreign income of a CFC as of November 2, 2017, or as of December 31, 2017.  § 965(a).

There is no ambiguity regarding the effective dates of the start of the GILTI regime and the end of the MRT.  As in *Varian*, if the Senate version of section 245A had been adopted, there would be no mismatch of effective dates.  *See Varian*, 163 T.C. at 103.

The House and Senate committee reports reflect on the interaction of the three provisions.  *See* H.R. Rep. No. 115-409, at 375; Staff of S. Comm. on the Budget, 115th Cong. 363.  Congress could have chosen for section 245A and section 951A to have the same effective dates.  Congress chose not to do so, and as in *Varian*, we will respect the choice that Congress made.  *See Varian*, 163 T.C. at 103.

Respondent contends that this case can be distinguished from *Varian* because here the Extraordinary Disposition Rules target a narrow set of related party transactions and do not change an effective date as the regulation did in *Varian*. Treasury Regulation § 1.78-1 gives an earlier effective date to one of the TCJA's amendments to section 78. *Varian*, 163 T.C. at 104. We agree that the Extraordinary Disposition Rules do not specifically change an effective date, but Treasury specifically drafted the Extraordinary Disposition Rules to address a gap created solely by different effective dates. Thus, while the mechanism for addressing the perceived problem is different, the effect is materially the same.

To recap, instead of changing an effective date, the Extraordinary Disposition Rules create a disqualified period that addresses the gap. Treasury promulgated the Extraordinary Disposition Rules to address the situation in which a "literal application" of section 245A could result in the section 245A deduction applying to income that is usually subject to subpart F or the GILTI regime. T.D. 9865, 2019-27 I.R.B. at 29. Treasury explained that the escape from taxation occurs "when a CFC's fiscal year results in a mismatch between the effective date for GILTI and the final measurement date under section 965." *Id.* In *Varian* and here, the regulations accomplish the same goal. In *Varian* the rule adopted by the regulation gave an earlier effective date to a TCJA amendment to section 78, *see Varian*, 163 T.C. at 104, and here, the temporary regulation imposes a limitation on section 245A which mimics the effects of the MRT and the GILTI regime. Or, thinking of it another way, the temporary regulation delays the effective date of section 245A for 50% of the dividends for certain taxpayers. In either case the results of the regulation here and in *Varian* are the same and that is that they are in conflict with a plain reading of the statute. *See Varian*, 163 T.C. at 104–05.

Additionally, respondent contends that the Extraordinary Disposition Rules affect only certain transactions. Transactions of CFCs that are calendar year taxpayers, transactions in the ordinary course of business, and any transaction with an unrelated party are not limited. *See* Temp. Treas. Reg. § 1.245A-5T(c)(3)(ii). Essentially, respondent argues the rules here are narrowly tailored to target specific problematic transactions.

That may be so, but it does respondent no good. Section 245A allows a 100% deduction for qualifying distributions after December 31, 2017. Treasury's adopted regulation disallows 50% of the deduction for

distributions that Treasury admits satisfy the plain terms of the statute, using criteria that appear nowhere in the statute. This creates a contradiction, and the statute must prevail.

In sum, even though the Extraordinary Disposition Rules are crafted to affect only certain transactions that, in Treasury's view, have "the effect of avoiding tax under section 965, 951A, or 951 by inappropriately converting income that should have been subject to U.S. tax into nontaxed income," these rules are needed only because of the effective date mismatches. *See* T.D. 9865, 2019-27 I.R.B. at 28. Limiting the section 245A deduction to certain transactions is inconsistent with a plain reading of the statute. Thus, the Extraordinary Disposition Rules cannot govern the outcome here.

C. *Whether the Extraordinary Disposition Rules Are Necessary and Appropriate*

Respondent argues that Congress delegated broad authority to Treasury to promulgate "necessary or appropriate" rules to define the limits of the dividends-received deduction. § 245A(g). Respondent also relies upon section 7805(a), which provides that Treasury "shall prescribe all needful rules and regulations for the enforcement" of the Code.

For the reasons we have already described, the Extraordinary Disposition Rules are inconsistent with section 245A and are outside the boundaries of regulatory authority that Congress provided Treasury in section 245A(g). The role of the reviewing court under the APA is "to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024). The reviewing court performs this role by "recognizing constitutional delegations, 'fix[ing] the boundaries of [the] delegated authority,' . . . and ensuring the agency has engaged in "'reasoned decisionmaking'" within those boundaries." *Id.* (first quoting Henry P. Monaghan, *Marbury and the Administrative State*, 83 Colum. L. Rev. 1, 27 (1983); and then quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)).

Because the sections are interrelated and part of provisions to move the United States towards a territorial tax system, respondent relies upon the Supreme Court decision in *Turkiye Halk Bankasi A.S. v. United States*, 143 S. Ct. 940 (2023), to argue that the text of section 245A is necessary and appropriate. The Supreme Court stated that "the

Court must read the words Congress enacted 'in their context and with a view to their place in the overall statutory scheme.'" *Turkiye Halk Bankasi A.S.*, 143 S. Ct. at 948 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

Post *Loper Bright*, the Supreme Court stated that "appropriate" is a "quintessentially 'context dependent' term [that] often draws its meaning from surrounding provisions." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2083 (2024) (quoting *Sossamon v. Texas*, 563 U.S. 277, 286 (2011)). But context does not help respondent. Here, Treasury is not trying to construe the language of section 245A. Instead, Treasury is trying to correct the mismatch in effective dates by changing the plain meaning of the statute.

The statute provides a 100% dividends-received deduction, and the Extraordinary Disposition Rules limit the deduction by 50% for dividends attributable to extraordinary dispositions. Temp. Treas. Reg. § 1.245A-5T. As already discussed, the statute contains no hint of such a rule. That is why, for justification, Treasury relies not on the statutory text, but instead on assertions regarding Congress's intent, gleaned from the overall structure of the TCJA. Treasury does not explain, however, why the effective dates Congress chose should be disregarded as evidence of its intent. In any event, when there is a direct conflict between a statute and a regulation, the statute prevails. *See In re Complaint of Nautilus Motor Tanker Co.*, 85 F.3d 105, 111 (3d Cir. 1996) ("[I]t is axiomatic that federal regulations can not 'trump' or repeal Acts of Congress."). And a regulation that purports to contradict the statute can be neither necessary nor appropriate.

Treasury, not Congress, was concerned that, for some taxpayers, foreign income might be earned after the measurement date for the MRT and before the start of the GILTI regime, and that this income might be eligible for the section 245A deduction. And Treasury, not Congress, decided unilaterally to approximate the tax treatment of the MRT and the GILTI by disallowing 50% of the section 245A deduction. *See* T.D. 9865, 2019-27 I.R.B. at 30–31. But the effective dates for the MRT and the start of the GILTI regime are clear. Therefore, Treasury does not have the authority to impose the MRT or the GILTI on foreign-source income subject to neither. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014) ("[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate.").

Section 245A applies to distributions after 2017 regardless of whether a dividend is paid out of earnings that would have been subject to the MRT or the GILTI if they had been earned at a different time, or neither. Nothing in the text of section 245A limits the section 245A dividends-received deduction because of the inapplicability of the MRT or the GILTI.[8]

The Extraordinary Disposition Rules were never contemplated by the statutory text. The Supreme Court has said that "self-serving regulations never 'justify departing from the statute's clear text.'" *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1485 (2021) (quoting *Pereira v. Sessions*, 585 U.S. 198, 217 (2018)); *see also Varian*, 163 T.C. at 104–05. We have previously held that the Commissioner's regulations "cannot change the result dictated by an unambiguous statute." *Abdo v. Commissioner*, 162 T.C. 148, 168 (2024) (citing *Niz-Chavez*, 141 S. Ct. at 1485).

The Supreme Court concluded in *Loper Bright* that "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning. That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Loper Bright*, 144 S. Ct. at 2266 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)); *see Varian*, 163 T.C. at 105.

Respondent contends that Treasury was filling up the details of a statutory scheme. Adding entirely new rules at odds with the statute goes beyond filling in the gaps. We have to ask the same question that we did in *Varian*: "Does the statute authorize the challenged agency action?" *Varian*, 163 T.C. at 106 (quoting *Loper Bright*, 144 S. Ct. at 2269). In *Loper Bright*, the Supreme Court noted that even under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), "[i]f the intent of Congress is clear, that is the end of the matter," and courts were therefore to "reject administrative constructions which are contrary to clear congressional intent." *Loper Bright*, 144 S. Ct. at 2264 (quoting *Chevron*, 467 U.S. at 842, 843 n.9).

Before *Loper Bright*, courts often applied *Chevron* deference to defer to agencies' "permissible" interpretation of ambiguous statutes even when the reviewing court read the statute differently. *Id.* at 2254.

---

[8] As already discussed, earnings that *are* taxed under subpart F, the MRT, or the GILTI generally are not eligible for the section 245A dividends-received deduction because they are classified as PTEP under section 959(a) and are not treated as dividends. § 959(d).

The Supreme Court has made it clear that courts should "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Id.* at 2266.

As we concluded in *Varian*, 163 T.C. at 107, the rulemaking authority "does the Commissioner no good here." Section 245A makes it clear that there is no limitation like the one Treasury proposed on the dividends-received deduction. The Extraordinary Disposition Rules fall outside the boundaries of any authority that Congress may have delegated under section 245A(g) or 7805. *See Varian*, 163 T.C. at 107. Therefore, because the Extraordinary Disposition Rules conflict with the statute, they do not affect our conclusion that petitioner is entitled to the full dividends-received deduction for the March 2019 Dividend.

VI.    *Conclusion*

For reasons stated above, we will grant petitioner's Motion and deny respondent's Cross-Motion.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

Reviewed by the Court.

URDA, *C.J.*, and BUCH, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, and FUNG, *JJ.*, agree with this opinion of the Court.

JENKINS, *J.*, did not participate in the consideration of this opinion.